IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTIAN JAMES LAURIA, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 22-486 |
| | ) Magistrate Judge Maureen P. Kelly |
| v. | ) |
| | ) Re: ECF Nos. 62 and 68 |
| C.O. LIEB; C.O. FORSICKA; and C.O. RICH GERBER, | ) |
| | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiff Christian James Lauria ("Plaintiff") is an inmate incarcerated at the State Correctional Institution at Houtzdale ("SCI-Houtzdale"). Plaintiff brings this action arising out of allegations that officials at the Allegheny County Jail used excessive force and denied him medical care in violation of his constitutional rights. ECF No. 5.

Presently before the Court is Plaintiff's Motion for Partial Summary Judgment, ECF No. 62, and Defendants' Motion for Summary Judgment, ECF No. 68. For the reasons that follow, the Plaintiff's motion is denied, and the Defendants' motion is granted.[1]

### I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that on March 18, 2021, he was assaulted by Defendants Corrections Officers Lieb, Forsicka, and Gerber during processing in the intake area of the Allegheny County Jail ("ACJ").[2] ECF No. 50 at 4-5. After the altercation, Plaintiff was placed in a restraint chair

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to having a United States Magistrate Judge conduct all proceedings in this case, including the entry of a final judgment. ECF Nos. 2, 29, and 86.

[2] Plaintiff's initial Complaint alleges that Defendants Lieb, Forsicka, and Corrections Officer Carr assaulted him, "punched [him] unconscious," and that Lieb held Plaintiff down with this boot on Plaintiff's face. ECF No. 4 at 4-6.

for several hours. Plaintiff sustained a broken orbital floor fracture that eventually required surgery and the implantation of mesh under his eye. Id. Plaintiff alleges that the force used was excessive and that Defendants were deliberately indifferent to his serious medical needs. Plaintiff seeks an award of compensatory and punitive damages, as well as a declaratory judgment related to his entitlement to damages. Id.

Defendants admit that "force was used by correctional officers on March 18, 2021 in the shower area of the ACJ Intake Department," and that Plaintiff was placed in a restraint chair for four and three quarters hours. ECF No. 54 ¶¶ 8, 11. Defendants contend that the force applied was reasonable and necessary to protect themselves from Plaintiff's attempts to injure them and to protect Plaintiff from self-injury. Further, Defendants state they were not deliberately indifferent to Plaintiff's medical needs. Id. ¶¶ 9, 19. Thus, Defendants deny that they engaged in any conduct that violated Plaintiff's constitutional rights. Id. ¶¶ 17, 20.

Discovery is complete and at this stage of the litigation, the parties accounts of the incident at issue differ.

Through written statements and a Use of Force Occurrence Report, Defendants assert that the use of force was necessary because Plaintiff threatened self-harm, threw items at them, and took a fighting stance to assault Lieb after being instructed to don a suicide prevention gown. ECF No. 69-2 at 6-7.

As reflected in the report, in the minutes prior to 8:00 a.m., Officer Brown contacted Gerber to report that an inmate in the intake area of the jail threatened suicide. Gerber and Lieb entered the area to investigate, and Plaintiff identified himself as the inmate who threatened self-harm.

---

While still unconscious, Plaintiff alleges he was tased. After the assault, he was placed a restraint chair and denied medical assistance. Five days later, he was taken to the hospital and diagnosed with an orbital floor fracture. The injury required surgery and the implantation of mesh under Plaintiff's eye. Id. The Amended Complaint omits some of the details and alleges Defendant Gerber's participation in the incident.

Plaintiff was escorted to the shower area and ordered to don a "suicide prevention gown." Id. Plaintiff initially refused but agreed to comply when told that if he continued to refuse, he would be secured in a restraint chair to ensure his safety. Lauria began to remove his clothing, called Defendants names, and then threw cards stored in his pocket at Lieb. Gerber states that Lieb "began to defend himself by creating distance between himself and Lauria." Id. At that point, Lauria "took a fighting stance and stepped toward [Officer] Lieb." Id. Gerber describes the use of force as follows:

> Ofc. Lieb immediately defended himself utilizing multiple hand strikes to actively counter Laura's assault. I then took Laura to the ground and ordered him to place his hands behind his back. Lauria did not comply with these orders and continued his combative actions toward Ofc. Lieb and this writer. This reporting sergeant then utilized multiple hand strikes to Lauria's facial area and torso area to gain compliance and defend myself against Lauria's punches and kicks. This reporting sergeant then utilized my issued Taser and deployed two probes into Lauria's torso. Lauria stop[ped] fighting and rolled onto his stomach. This writer then followed up with a third point of contract to Lauria's lower back area. Responding staff assisted Ofc. Lieb and I, in getting Laura secured in handcuffs. Once Laura was secured, I handed the still picture camera to Ofc. Bender who began to record the incident. I then requested medical to the area to remove the Taser probes. However, both probes disconnected during the incident. Ofc. [t]hen began to systematically secure Lara into the emergency restrain chair under my direction. I assisted officers by tightening the lap belt and apply the right should restraint. Laura was then escorted to Cell H9. There, the restraints were checked and cleared for tautness after some adjustment. A 3-5 minute observation period was then conducted before this reporting sergeant conducted my on-camera debriefing. I then ordered all officers involved to stand down and generate reports.

Id. at 7.

Lieb's report corroborates Gerber's description of the incident and adds that "Medical cleared inmate Lauria." Id. at 9. Forsicka states that Plaintiff was "ordered to be placed in the restraint chair after the nurse removed the taser prong. He was rolled over and the taser prong had come out on its own therefore medical was not needed at that time." Id. at 10. Other responding

3

staff corroborate Lieb and and Gerber's version of the events for the portions of the incident they observed or participated. Id. at 4-5, 8-17.

Plaintiff's medical records show that at he was placed in a restraint chair was checked by a nurse prior to 8:32 a.m. ECF No. 69-6 at 3. Plaintiff was observed to have bruising and a physician assistant was contacted to conduct an assessment. He was examined by a physician assistant prior to 9:50 a.m. and reported pain, thirst, a need to use the bathroom, and stated that he had taken "benzos outside." Id. at 2. The physician assistant noted "large periorbital edema, tender nasal bridge/epistaxis present to lower chest, multiple abrasions R posterior/temporal areas, no active bleed." Id. He was assessed by ACJ mental health specialists later that day but was uncooperative. Id. at 4. The responding mental health staff member requested that Plaintiff be placed in close observation in Unit 5C, but no beds were available at the time. Id.

Plaintiff's account differs. He contends that he was a pretrial detainee at the time of the incident and was assaulted by Defendants and denied necessary medical attention. ECF No. 62-1. He states he was placed in a restraint chair "for sadistic and malicious reasons" despite being handcuffed and not moving or causing harm to anyone. Id. He requested medical attention but Gerber "replied no" and instructed an intake nurse to "just leave him." Id. Plaintiff complains that he was held in the restraint chair for "over 4 ½ hours." Id.

Plaintiff was seen in an emergency room on March 22, 2021, and evaluated for trauma to his left eye. ECF No. 58-4. Plaintiff was diagnosed with a left orbital floor fracture, treated with topical steroids, and discharged. Id. Three weeks later, Plaintiff underwent surgical repair of the fracture. ECF No. 58-5.

Plaintiff was issued a Class 1 Misconduct stemming from the incident. ECF No. 58-6. The issuing officer stated that Plaintiff "threw multiple cards at Ofc. Lieb while being strip searched to

be placed into a suicide prevention gown. [Plaintiff] began to resist and became combative while officers were securing him into handcuffs. [Plaintiff] was then placed into an emergency restraint chair before being secured into Cell H9." Id. Other than Plaintiff, no one was injured in the incident. ECF No. 58-7.

In accordance with the Court's scheduling order, Plaintiff filed a Motion for Partial Summary Judgment, Brief in Support, Addendum with exhibits, and Concise Statement of Material Facts. ECF Nos. 62-64. Defendants also filed a Motion for Summary Judgment, Concise Statement of Material Facts with exhibits, and Brief in Support. ECF Nos. 68-70. The parties have responded to the pending Motions for Summary Judgment, and the Court has received video evidence in support of Defendants' motion.[3] ECF Nos. 72, 74, 75.

Plaintiff filed correspondence complaining that he did not receive Defendants' filings in this matter. ECF No. 76. The Court provided copies to the Plaintiff and reminded Defendants of their obligation to serve Plaintiff in compliance with prison mail policies. ECF No. 77. In addition, the Court granted Plaintiff leave to file a supplemental response, if necessary. Id. Thereafter, Plaintiff filed a Motion for Ruling and stated that he had received "all the paperwork needed" and that he did not require any additional time to file a supplemental response. ECF No. 78.

The summary judgment motions are ripe for consideration.

## II. LEGAL STANDARD

### A. Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the

---

[3] The video depicts Plaintiff's placement in the restraint chair and records ACJ staff reports but does not include the alleged assault that occurred while Plaintiff was in a screened area removing his clothes.

5

outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). See also Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof.").

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by ... citing to particular parts of materials in the record, including depositions, documents ..., affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of W. Chester, Pa., 891 F.2d 458, 460–61 (3d Cir. 1989) (the non-movant must present affirmative evidence—more than a scintilla but less than a preponderance—which supports each element of his claim to defeat a properly presented motion for summary judgment). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. Anderson, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." Messa v. Omaha Prop. & Cas. Ins. Co., 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting Anderson, 477 U.S. at 249-50)). "If reasonable minds

could differ as to the import of the evidence," however, summary judgment is not appropriate. See Anderson, 477 U.S. at 250-51.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F. 3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255)).

Finally, where cross-motions for summary judgment are pending, a district court "should consider cross-motions for summary judgment separately and apply the appropriate burden of production to each motion." Beenick v. LeFebvre, 684 F. App'x 200, 205 (3d Cir. 2017) (not precedential) (citing Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008)). "If upon review of cross motions for summary judgment [the court] find[s] no genuine dispute over material facts, then [the court] will order judgment to be entered in favor of the party deserving judgment in light of the law and undisputed facts." Iberia Foods Corp. v. Romeo, 150 F.3d 298, 302 (3d Cir. 1998) (citing Ciarlante v. Brown & Williamson Tobacco Corp., 143 F.3d 139, 145–46 (3d Cir. 1998)).

### B. *Pro Se* Pleadings and Filings

Plaintiff is proceeding *pro se*, thus he is entitled to liberal reading of his pleadings and documents filed in opposition to the pending motion. Porter v. Pa. Dep't of Corr., 974 F.3d 431, 440 (3d Cir. 2020) (quoting Higgs v. Att'y Gen. of the U.S., 655 F.3d 333, 339 (3d Cir. 2011) ("[t]he obligation to liberally construe a pro se litigant's pleadings is well-established.")). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax, and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v.

MacDougall, 454 U.S. 364 (1982); U.S. ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969) (A "petition prepared by a prisoner ... may be inartfully drawn and should ... be read 'with a measure of tolerance'"); Freeman v. Dep't. of Corr., 949 F.2d 360 (10th Cir. 1991).

Even so, at the summary judgment stage of the proceedings, the Court need not credit bald assertions or legal conclusions unaccompanied by evidentiary support. Jones v. United Parcel Serv., 214 F.3d 402, 407 (3d Cir. 2000). "[A] pro se plaintiff is not relieved of his obligation under [Federal Rule of Civil Procedure] 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment." Dawson v. Cook, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017) (citation omitted). See also Boykins v. Lucent Techs., Inc., 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000) ("merely because a non-moving party is proceeding pro se does not relieve him of the obligation under Rule 56(e) to produce evidence that raises a genuine issue of material fact"); Winfield v. Mazurkiewicz, No. 11-584, 2012 WL 4343176, at *1 (W.D. Pa. Sept. 21, 2012).

Because Plaintiff is a *pro se* litigant, this Court will consider the facts and make inferences where it is appropriate.

## III. DISCUSSION

### A. Defendants' Motion for Summary Judgment (ECF No. 68)

Defendants seek entry of summary judgment in their favor as to all claims asserted against them because Plaintiff failed to exhaust administrative remedies.[4] ECF No. 68, ECF No. 70 at 2-

---

[4] Defendants also assert as grounds for summary judgment: (1) the insufficiency of the evidence that Forsicka used force against the Plaintiff; (2) Gerber and Lieb did not use force that was objectively excessive under the circumstances; (3) Defendants Lieb and Gerber and had no control over the time Plaintiff remained in the restraint chair; (4) Plaintiff received medical care and thus Defendants were not deliberately indifferent to his serious medical needs; and (5) qualified immunity applies to Plaintiff's claims. The Court need not reach these additional grounds for relief because on the record presented, it cannot be disputed that Plaintiff failed to exhaust available administrative remedies. ECF No. 68.

3. Because there is no evidence that Plaintiff exhausted available administrative remedies, the Defendants' Motion for Summary Judgment is properly granted.

The Prison Litigation Reform Act ("PLRA") states that a prisoner cannot bring an action under Section 1983 "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This mandatory exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). "Exhaustion is considered separately for each claim brought by an inmate, and if a complaint includes both exhausted and unexhausted claims, courts will dismiss the latter but not the former." Shifflett v. Korszniak, 934 F.3d 356, 364 (3d Cir. 2019).

The exhaustion requirement of the PLRA is one of "proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 84 (2006). Failure to comply with the procedural requirements of the available grievance system will result in a claim being found procedurally defaulted. Id. at 90; Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004); Robinson v. Superintendent Rockview SCI, 831 F.3d 148, 153 (3d Cir. 2016). In assessing default, the prison's grievance policy is what "define[s] the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007).

Failure to exhaust is an affirmative defense under the PLRA. Id. at 216. Thus, Defendants have the burden of proving that Plaintiff failed to exhaust his available administrative remedies. See, e.g., Rinaldi v. United States, 904 F.3d 257, 268 (3d Cir. 2018). The United States Court of Appeals for the Third Circuit has explained that if the defendant shows that the inmate failed to exhaust his administrative remedies, then "the inmate plaintiff bears the onus of producing evidence that the on-the-books remedies were in fact unavailable to him or her." West v. Emig, 787 F. App'x 812, 814 (3d Cir. 2019) (citing Rinaldi, 904 F.3d at 268). Absent a situation when

9

administrative remedies are not "available," a court may not excuse an inmate's failure to exhaust "irrespective of any 'special circumstances.'" Ross v. Blake, 578 U.S. 632, 639 (2016).

Defendants present the Declaration of the Deputy Warden for Operations at ACJ, signed under penalty of perjury. ECF No. 69-8. The Deputy Warden states that ACJ's Inmate Handbook is provided to every inmate upon admission to ACJ and describes the inmate grievance process. To comply, inmates must submit a written grievance within fifteen days from the event complained of. Once a grievance is submitted, it is recorded into a searchable database. As related to Plaintiff's claims, the Deputy Warden conducted a search for any grievance submitted by Plaintiff for the period March 18, 2021 through Plaintiff's release on May 20, 2021. No inmate grievances were located. Id. Defendants assert that Plaintiff's failure to submit a grievance requires dismissal of this action.

Plaintiff opposes summary judgment on this basis. In his unverified initial Complaint, his unverified Amended Complaint, and in his Brief in Opposition to Defendants['] Motion for Summary Judgment, Plaintiff states that he submitted a grievance and that ACJ officials "never answered." ECF No. 50 at 6-8; ECF No. 75 at 1. Plaintiff asserts he was in segregated housing. Pursuant to the procedure for his housing unit, he placed his grievance in the "door slot." ECF No. 75 at 1. At that point, he relied upon corrections officers to deliver his grievance to "the grievance box." Id. But Plaintiff's statements are not made under penalty of perjury pursuant to 28 U.S.C.A. § 1746 and therefore may not be considered by the Court.

The Third Circuit has clearly stated that "while an unsworn statement may be considered on summary judgment, an unsworn statement that has not been made under penalty of perjury cannot." United States ex rel. Doe v. Heart Sol., PC, 923 F.3d 308, 315 (3d Cir. 2019). Certainly, where the complaint is verified, the court may treat factual allegations in the complaint that are

10

based on personal knowledge as if they were made in an affidavit or declaration. Parkell v. Danberg, 833 F.3d 313, 320 n.2 (3d Cir. 2016) ("Because [statements in verified complaint and other court filings] were signed under penalty of perjury in accordance with 28 U.S.C. § 1746, we consider them as equivalent to statements in an affidavit."); Reese v. Sparks, 760 F.2d 64, 67 (3d Cir. 1985) (treating verified complaint as an affidavit in opposition to a motion for summary judgment). Here, however, Plaintiff did not sign his Complaint, his Amended Complaint, or his brief in opposition to summary judgment under penalty of perjury. Thus, the Court cannot consider the unsworn statements related to exhaustion as part of its summary judgment analysis.

On the record before the Court, Defendants have shown that there is no genuine dispute over whether Plaintiff failed to exhaust his administrative remedies for his claims arising out of the incident that occurred on March 18, 2021. In turn, Plaintiff has not met his burden to demonstrate that the grievance process was unavailable to him. Thus, Plaintiff has failed to establish a genuine issue of material fact that he properly exhausted his administrative remedies as required by the PLRA. Accordingly, summary judgment is properly entered in favor of all Defendants as to all claims asserted by Plaintiff.

**B. Plaintiff's Motion for Partial Summary Judgment (ECF No. 62)**

Plaintiff moves for summary judgment on his claims for the alleged excessive force and the denial of medical treatment in the immediate aftermath of the altercation at issue. ECF No. 62. Plaintiff asserts that the evidence is sufficient to establish that the use of force, including his placement in a restraint chair, was excessive and violated his constitutional rights. ECF No. 65. Plaintiff also contends that it is not disputed that Defendant Gerber delayed medical care for his injuries and was deliberately indifferent to his serious medical needs. Id. Thus, Plaintiff seeks entry of partial summary judgment in his favor. ECF No. 63.

The Court does not reach the merits of Plaintiff's Motion for Partial Summary Judgment because, as explained above, the PLRA bars his claims due to Plaintiff's failure to exhaust available administrative remedies. Under these circumstances, the Plaintiff's Motion for Partial Summary Judgment must be denied.

## IV. CONCLUSION

For these reasons, the Motion for Summary Judgment filed on behalf of Defendants C.O. Lieb, C.O. Forsicka, and C.O. Rich Gerber, ECF No. 68 is granted, and the Motion for Partial Summary Judgment filed by Plaintiff Christian James Lauria, ECF No. 62, is denied. An appropriate Order will be entered.

DATED: February 6, 2024

BY THE COURT:

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc: Christian James Lauria
KC6631
SCI Houtzdale
P.O. Box 1000
29 Institution Drive
Houtzdale, PA 16698-1000

All counsel of record via CM/ECF.